RED RIVER VALLEY BROADCASTING
CORPORATION, Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,
Gillespie Broadcasting Company,
Intervenor.

No. 14948.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 16, 1959.

Decided Dec. 10, 1959.

Petition for Rehearing En Banc Denied
Jan. 12, 1960.

Mr. Robert M. Booth, Jr., Washington, D. C., for appellant.

Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, for appellee. Messrs. John L. FitzGerald, General Counsel, Federal Communications Commission, Max D. Paglin, Asst. General Counsel, Federal Communications Commission, and Richard M. Zwolinski, Counsel, Federal Communications Commission, were on the brief for appellee. Mr. Jerry M. Hamovit, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Mr. Aloysius B. McCabe, Washington, D. C., with whom Mr. Reed T. Rollo, Washington, D. C., was on the brief, for intervenor.

Before Mr. Justice BURTON, retired,* and EDGERTON and BURGER, Circuit Judges.

BURGER, Circuit Judge.

The Federal Communications Commission granted the intervenor's application for a construction permit for its existing standard broadcast station KNAF at Fredericksburg, Texas, to change its frequency from 1340 to 910 Kilocycles and its power from 250 watts to 1 kilowatt, and changing from unlimited time to daytime only. Appellant is licensee of standard broadcast station KRRV at Sherman,

---

* Sitting by designation pursuant to Sec. 294 (a), Title 28, U.S.Code.

Texas, operating on 910 kilocycles, on unlimited time, with 1 kilowatt power.

Intervenor's application was set for hearing with the mutually exclusive application of one Mathis for a new standard broadcast station to operate on 910 kilocycles, 500 watts, daytime only from Abilene, Texas. The Mathis application was withdrawn, rendering comparative hearing unnecessary. However, the problem of prospective interference with appellant's station by the intervenor's proposed operation required that a hearing proceed.

This hearing was governed by the original issues designated by the Commission before the Mathis withdrawal. The Examiner was of the view that it would not be in the public interest to deprive approximately 4000 persons of their only primary night service, as would be required if intervenor's application was to be granted.[1]

Exceptions to this decision were filed by the applicant, and after briefs and oral arguments the Commission, reversing the Hearing Examiner, granted intervenor's application. The Commission concluded that the public gain in the resulting new daytime service was sufficient to outweigh the loss resulting from daytime interference to heavily serviced areas on the extreme outskirts of appellant's service area.[2] Later, the Commission granted appellant a rehearing on the

issue of loss of the only primary night service to Fredericksburg, which it concluded should have been considered in its decision. After this rehearing the Commission affirmed its previous grant.

■ The basic facts of the controversy are undisputed. As presently operating, KNAF gives interference-free daytime service to an area of 1,827 square miles with a population of 14,309 persons. Under the proposed construction it would serve an area of 8,584 square miles, with a population of 64,805. Similarly, KNAF gives primary nighttime service to approximately 4,000 persons in an area of 63.8 square miles. Thus, though some 4,000 people in a limited area would lose primary night service,[3] the new service would give some 50,496 more people new, interference-free daytime service in an area roughly 4⅓ times as great. The basic problem before the Federal Communications Commission was whether the gain offset the loss; the Commission found it did, and on this record we cannot say its determination was incorrect.[4]

■■ As to the interference aspect, the record shows that appellant's station is 268 miles from KNAF, and that the interference foreshadowed would cover 1,206 square miles and 23,632 persons, a total of 3.29% of appellant's protected population contour, and 4.98% of appellant's protected area contour. Twelve

---

1. The Examiner raised the question that if his view was in conflict with the Commission's policy, as contended by intervenor, reversal of his position would permit public announcement of that policy.

2. The loss of night service resulting from the grant of intervenor's application was held by the Commission to be outside the scope of the issues designated for hearing. It was not referred to in the prehearing letter sent to the participants and no one had sought to enlarge the issues to include this point specifically.

3. It should be noted that at present KNAF is operating on the minimum nighttime schedule permissible under F.C.C. regulations, i. e., from 6:30 A.M. to 10 P.M. weekdays, and 8 A.M. to 6 P.M. Sundays. The relatively small area and population given primary night serv-

ice, and the limited operating schedule would support the Commission's finding that night service was "especially limited."

4. The F.C.C. has allowed the dropping of night service in favor of expanded day facilities. See Vidalia Broadcasting Co. (WVOP), 8 Pike & Fischer R.R. 1 (1952). It must be remembered that if a need arises for renewal of such service to the area, the Commission in its decision pointed out that nothing precludes renewal. Nor does its decision mean that there would be a complete absence of night service to the area; secondary service is available from nearby San Antonio. The only person objecting to the dropping is appellant. To date none of the persons in the affected area have complained, or have urged denial of KNAF's request.

broadcast stations give primary service to the entire interference area, and 16 additional stations give primary service to portions thereof. No other station would receive interference. The Commission balanced the loss to this heavily served area against the gain to the relatively unserved area to be benefited by intervenor's proposal. We find no reason to disturb the conclusion that this would be in the public interest.[5]

Affirmed.

---

5. The mere fact of interference is not enough to deny the grant. See § 3.24(b)(2), Commission's Broadcasting Regulations, 47 C.F.R. 141 (1958); Interstate Broadcasting Co. v. Federal Communications Comm., 1959, 105 U.S.App.D.C. 224, 265 F.2d 598; Beaumont Broadcasting Corp. v. Federal Communications Comm.,

1952, 91 U.S.App.D.C. 111, 202 F.2d 306.